Good morning, Your Honor. My name is Arthur Weed. I'm the lawyer for James Porter, who's the appellant in this case. He's a state prisoner serving a 25-to-life sentence in California under the three-strikes law. He was a felon in possession of a weapon. A gun was found in the trunk of a car that he borrowed, and so he's now in prison. His federal petition for habeas corpus was dismissed almost as soon as it was filed, because mathematically it appeared to the magistrate who reviewed his habeas petition in the federal court that more than a year had elapsed between when his state case became final and when he filed the federal petition. And as the court knows, under ADPA the petition must be filed within a year. Now, the court also requested that both sides would address the effect of the U.S. Supreme Court that having granted certiorari in Holland v. Florida, where the issue was the same as it is in this case, and that is okay if there is more than a year that it has elapsed, can the statute of limitations be equitably told because of, quote, Now, I don't know, of course, what the U.S. Supreme Court is going to do. No one knows that. But they may use this as an opportunity to say there is no such thing as equitable tolling. In other decisions, as the government has pointed out here, they have pointed out the fact that they haven't ruled on that yet. And they may very well decide to rule on it in Holland v. Florida, and they may very well say there is no equitable tolling. Mr. Weed. Yes, sir. I doubt that they'll say there's no equitable tolling. What they might say is there's no equitable tolling lacking or showing a bad faith, dishonesty, divided loyalty, or mental impairment, using some language in one of our cases. So the issue is, will they extend equitable tolling from bad faith, et cetera, et cetera, et cetera, to gross negligence? Isn't that the issue? So is your position that we should not suspend consideration of this case until Holland comes out, because there are elements of proof here of bad faith, dishonesty, divided loyalty and mental impairment? Yes, sir. That is my position. Now, what happened was. Mr. Weed, could I ask you one question? Yes, sir. When did you come on the scene in this case? At what point did you begin representing the petitioner? After this court granted a certificate of appealability. And then the court directed the federal public defender to find someone, and they found me. Okay. The reason I ask that is I'm interested in some of the things that happened in the California Supreme Court. Do you know that record pretty well? No, sir, I do not. Okay. I wish I did. But, see, the problem here is that there really hasn't been a record developed. What he did was he filed his petition for habeas corpus. The magistrate recommended that it be denied, but they gave him an opportunity to file objections to the magistrate's recommendation. Did he have counsel then? No, he did not. And he filed objections, I assume, through a jailhouse lawyer. You know, that's what it looks like. And the district judge denied a certificate of appealability. That's correct. And then this court granted one. That's correct. And you came on the scene, thankfully. Then I came on the scene and tried to figure out what had happened. And I think both sides in this case are impeded by the fact that there never was a record that was developed. Did you ever calculate how much time it actually expired in terms of the one year? Did you ever make your own calculation of that? Yes, sir, I did. Could I address that briefly? Sure. Okay. His direct review in the California Supreme Court became final 90 days after the opinion, which would have been June 12th of 2001. He began his first round of state habeas proceedings on September 26th, 2001. And so the gap between direct review becoming final and initiating a habeas proceeding, which would toll the statute, is 106 days. So we initially have 106 days that are not subject to tolling. The first round of habeas appeals became final on July 17th of 2002. And he began a second round of state habeas proceedings on April 24th of 03. And that is a period of 281 days. And if you add those two figures together, and this is just to get to the point where he began his second round, that totals 387 days, which clearly is more than a year. And so absent equitable tolling, he is barred by the time periods of ADPA. I'm going to ask you a question. Do you regard any of the time when Mr. Dangler was retained and represented the petitioner as time that would count against him under the one-year limitation? No, sir. I would regard all of that. You would consider all? I would consider all of it. You would take the position that his work was so egregiously ineffective that none of the time would apply. That's correct, Your Honor. And he was hired in November of 2001. Oh, well, that was my next question. Dangler was hired in November of 2001, some eight months before he started the second round. That's correct. And he assisted with the second round. I guess we don't know the exact date in November, though, do we? No, we don't. Do you find that from the record? I couldn't find the exact date in November when Dangler was retired. Well, Dangler is no longer in the state. I guess the facts would only support that he was retained in November of 2001. We don't know whether it was the 1st or the 30th of November. No, we don't know that. But if we take it to be the 30th of November, you'd have to add the time from September 25th to the 30th of November, another 60 days, 65 days. Yeah. To the 106. But that still would be less than a year. Yeah. So you say 171. And what you say is he's entitled equitable tolling from the moment that the inept Dangler, inept or corrupt Dangler, came on the scene. Yes, sir. That's correct. And I would agree. Can I ask another question? Yes, yes. I'm sorry to interrupt you. No problem. Maybe Judge Beal will give you a little more time. Then we have the other attorney who came in on the scene who succeeded Mr. Dangler and who wrote to the petitioner and said he was going to represent him. That's correct. All right. Now, does any of the time that that lawyer spent count against Mr. the petitioner in this case? Your Honor, I would argue that all of it did for the reason that that attorney is also subject to disciplinary proceedings that have just been begun within the last month. So so none of his service as an attorney would count in your view. It would all be equitably told. Equitably told. That's really what I mean. Yeah. OK. Now, let's assume that the Supreme Court in Holland versus Florida does come out with a more or less bright line rule that there can be no equitable tolling for attorney negligence in the absence of bad faith, dishonesty, divided loyalty or mental impairment. What I suggest is that in this case, we have the second of those two elements, namely dishonesty. And the record that we have thus far, I suggest, establishes that. And I would refer the court to page 53 of my excerpts of record, which was an exhibit that was attached to the objections to the magistrate's findings. And that exhibit is a an opinion by the California Client Security Fund Commission, because Mr. Porter asked that the state would pay the seven thousand dollars plus that he had paid to Mr. Dangler. And the state, in fact, paid. And beginning at page forty nine in the excerpts of record is their reason why they paid that. In other words, they investigated Mr. Dangler. And at page fifty three at the top, it says Mr. Dangler objected to this being paid. And so there was somewhat of an adversary proceeding where they said, we have decided to pay it. And here's why. And I'm reading now from page. We've seen that you've seen that. OK. Does refer to dishonest. Yes, they do. And that is your point that he was running what has been referred to as a written mill. That's correct. And do you take the position that his second his advice to file a second California habeas was part of that dishonest conduct? Yes, sir.  And I would also. Excuse me again. I'm not familiar with California. California permits more than one habeas application. It's funny what they do, that there is no time period. It's simply a reasonable period. And the burden is on the applicant. You can file. You can have lost the California Supreme Court once and then go back again and start over with a habeas proceeding in the California system. That's correct. The constraints are that you have to do so within a reasonable time of when you learn the basis for the second or subsequent petition. But it is not barred as such. And there is no time period between when you file the petition in the superior court and then it goes to the court of appeal and then to the Supreme Court. California appears to be unique in that sense. And the U.S. Supreme Court has addressed this in I'm sorry, I don't remember the name of the case, but it recently came to their attention. I'm aware of that. Yeah. What I believe is that if this court were to remand this case to the district court, which is what happened in the Spitzen case where the court recognized that there was equitable tolling because of attorney negligence, to develop a more clear record as to whether in fact either bad faith, dishonesty, divided loyalty or mental impairment was shown here, whether the record shows that. It's very limited at this point because all we have essentially are the pleadings that were submitted by Mr. Porter. We don't have any state lodged documents or any other matters which I think would present a clearer picture. And so I'm suggesting that even though we do have a grant of certiorari in Holland versus Florida, and we don't know what they're going to do, but whatever they do, I think this case will survive whatever the ruling is in Holland versus Florida, and that it should be remanded so that at least Mr. Porter gets his day in court and there would be a fair determination of whether or not the attorney's negligence rose to the level that would permit equitable. The Holland grant of certiorari, the question on appeal, has to do whether gross negligence triggers equitable tolling. It isn't reconsidering whether dishonesty, bad faith, mental impairment, et cetera, constitutes equitable tolling, correct? No. My understanding is that the 11th Circuit, in their opinion, entitled Holland versus Florida, or whatever it was entitled, that they said that, that they, in essence, established this bright line rule, and the Supreme Court said we're going to review that. Now, what they would do with that, I don't know, of course. There is a possibility that they might say, the Supreme Court, that even if there's dishonesty, mental impairment, corruption, or whatever, not entitled to equitable tolling, I think it would be very difficult for it to do, but there's a possibility of that. I don't think it would be difficult for them to do. You know, I'm afraid of it, you know, from my perspective. Okay. I think you've run across. Counsel, Judge Gould, I've got a question for you. Yes, sir. If I could, please. So I certainly understand the reasons, a lot of reasons why we should wait for Holland, and I'm not going to hazard any prediction about what they're going to say, but I want to understand this. Are you asking for us to remand to the district court for fact-finding before the Holland decision? Yes, sir, I am. Before that's finalized? Okay, so here's my question about that. The Supreme Court has a slightly different issue, gross negligence issue, and they may say nothing at all about dishonesty, but on the other hand, if they leave a window for equitable tolling in an AEDPA case, they may say something about it that would provide guidance. So would it be more sensible, since we've got some precedents that say the Supreme Court, unlike us, can make statements in dicta and we're supposed to give them a lot of weight, you know, would it make sense to wait for the Supreme Court before remanding so that if there's going to be a fact hearing, the district court before holding that hearing can look at whatever the Supreme Court has said? Your Honor, I think the district court itself would be entitled to or would be certainly able to apply whatever they say in Holland v. Florida, but I think the issue of whether to wait before deciding this case until Holland v. Florida is decided, I would suggest that that is something the court will have to decide. I would argue against it, but I'm not sure that that's really my province to do that, because I don't make the decision. I just argue for one side or the other. Okay. Okay. Thank you very much. Thank you. Thank you. And thank you for undertaking this case. Well, it's an interesting case. Thank you. Good morning. May it please the Court. I'm Kevin Viena, Deputy Attorney General for the California Department of Justice, arguing on behalf of Respondent. Perhaps with regard to the first question, should the Court, or what I believe may be the first question, should the Court wait to see what happens in Holland? I think that there may well be some merit in that. In some ways it's difficult to shape your order of remand if there is one. The district court is bound to comply fairly closely with the remand order. I think the remand might be shaped better if it can be sent back in light of Holland. But I don't believe that's necessary in this case, and I'll explain why. But as I explain why, I don't want to suggest that in any way I think that the behavior of Mr. Dangler can be defended. I wouldn't do that. I believe Mr. Dangler's behavior was deplorable, and the State of California has acted on that. But that's not the only issue. That is, even if some sort of attorney malfeasance can give rise to equitable tolling, I guess what I would say is we've been arguing and hold out some hope that the Supreme Court will apply the analysis in cases like Beggarly to say that it isn't. It can't exist under 2254. But if it does survive, that there is no equitable tolling. And I'm informed, though I don't have any reference for it, that the State of Florida will advance that argument. That there is no equitable tolling. That there is no equitable tolling. Has any circuit passed on this? Pardon me? Has any circuit ever held that there is no equitable tolling? No circuit has ever held that there's no equitable tolling. On the other hand, all of the circuit precedent, at least my canvassing of it, in the various circuits addressing whether there is or should be equitable tolling hasn't provided enough weight to the analysis of the United States Supreme Court in cases like Beggarly that says that equitable tolling is unlikely to exist if a statutory scheme is sufficiently detailed to suggest that Congress has considered those instances in which the limitations period should be told. And that certainly is the case with, in 2254, a number of factors that provide for either later start dates or delayed start dates to ensure that a diligent petitioner will have the opportunity to present his claims in the federal court. For example, newly discovered evidence would provide a later start date or something that stands in the way. Suppose there's some evidence, and I don't want to intimate that there is any of this evidence, but suppose there's some evidence that the prosecutor in this case simply bought off Mr. Dangler and said make up this screwy second petition to the state authorities because I don't want to let this guy out and here's a couple of bucks for you. Would that mean there's no equitable tolling? You would need equitable tolling. That would be a fact later discovered, a later arising fact that would provide a new initiation date for the limitations period. So at least that example is one that I don't think we need to be worried about. But to return to, if I may, to return to where I was, I think the information that Mr. Porter provided to the district court made it clear that he didn't act diligently in pursuing his claims, his post-conviction claims. And I think that's apparent from the record that we have here now. We have, in the first instance, no showing that anything that happened in his involvement with Mr. Dangler was causative of his delayed filing. That is, for example, it seems that one of his principal arguments is that he was unable to file his own claims because he didn't have the trial transcript. On the other hand, he told the district court that he received his trial transcript in October 2006, but he signed his federal petition on September 24, 2006. So there's no causative link between his legal papers or the trial record that he was missing and his federal petition. He also said that the claims he has filed in his federal petition are the exact same claims that were raised in his direct appeal. That's in one of his statements at Executive Record, page 45. The exact same claims. So nothing changed. But there's nothing in the district court record to support what you're saying. You're pointing out material in the record, but the district judge did not pick up on these points that you're making now. Well, I can't say whether he picked up on them or not. I would agree that those aren't the factors. The magistrate didn't. The magistrate who made the preliminary report. Yes. The magistrate didn't have this information. It was provided to the district judge in the objections. And if this information is subsequently regarded as important, it can still be considered by the district judge. Yes, it could be. But at some point, well, because Mr. Porter filed objections, the district court judge was required to review the entire record de novo, the entire factual record de novo. The pleadings for this, for his federal petition, were completed not later than 2004. We know that because he includes an earlier copy of pleadings that were prepared for Mr. Dengler and were prepared for his signature in excerpts of record page 138, word for word, by 2004. Dengler's gone by August 2004. Roman Rector writes a letter in early September 2004, says, I will take this case for you and let me know. Mr. Porter responds quickly to him, and Rector replies again on October 5th, 2004. But Rector didn't do anything. He didn't do anything for about a year. But here's what the ‑‑ yes, Roman Rector didn't do anything for quite a while, and it looks like Mr. Porter took no action to question or to urge or to insist or to demand that Rector ‑‑ Do you hold that against him? I don't hold it against him. I mean, I wouldn't say I hold it against him. What I would say is that this is what is the key distinction between Mr. Porter and Mr. Spitson, which I believe is the seminal case in the Ninth Circuit for permitting equitable tolling for some degree of attorney malfeasance, attorney behavior that is sufficiently egregious. What is that difference? The difference is this. Mr. Spitson hired an attorney at the very beginning of the statute of limitations period, shortly after his conviction became final. And over the course of the next ten months, he and his mother sent several letters and made several telephone calls to that derelict attorney, informed him two months before the limitations period had expired that he would no longer be the attorney, demanded the return of his records and didn't get those records back until after the limitations period had expired. As distinguished from that diligent behavior on the part of Mr. Spitson, Mr. Porter, in November of 2001, hires Dangler. At that time, there were 249 days remaining in the limitations period because 106 had expired between the time of finality of the state conviction and the filing of his first petition in the California Court of Appeal. So 240 days expired. There was at that time a pending California Supreme Court petition, and that was denied on April 17, 2002. So five months into Mr. Dangler's tenure, the limitations period begins to run again. That limitations period runs without interruption until April 24, 2003. That is more than another year, and there is simply no indication in the record that Mr. Porter ever made an inquiry about anything that happened during that entire one-year period. Indeed, the limitations period in the absence of equitable tolling expired some four or five months earlier. By my calculation, about December 2002, the limitations period expired, and Mr. Porter is making no inquiries about what's happening. If there is a requirement for diligence, and I believe that however the United States Supreme Court decides Holland, there's no chance that there will be equitable tolling without a requirement for diligence, the very documents that Mr. Porter presented to the district court demonstrated that he was not diligent. This case is, he was convicted in 1999, and ten years later he is still bringing a challenge to that conviction. Most of that period went by with him doing essentially nothing. Once again, I don't want to, I'm not suggesting in any way that what Dangler did was proper or correct, but a litigant still has a requirement of diligence, and Mr. Porter didn't show that. It would be, I suppose, simple enough to remand this to the district court, but I'd like to close with just one comment. Equitable tolling, at least for most of the last 13 years, has been described as something that occurs rare, rarely. I did, as I was doing some research for this case, looking mostly at the Holland materials, I simply looked on the Westlaw screen to see how many times Spitson had been cited. Spitson, and the number was 1,131. It is far from rare. There are claims of equitable tolling in almost every statute of limitations case that I handle. I am hopeful that Holland will provide a line that will remove this burden on the federal courts and serve the interest that I represent, which is finality, or that I seek to have observed by the federal courts, finality and comity of state judgments. But this case is an unfortunate example. Please help me out. Remind me, did the district court make a finding that Porter had not been diligent? Well, I wouldn't say, I mean, I can't say that it's listed as a finding, but that was identified as the standard, that is, the standard from Pace, that there must be some extraordinary circumstance that prevents him from filing on time and that he be diligent. It's implicit. Yes, Your Honor. And there was a full discussion of that. And it is, you can't miss, I think, in that period from November 2001 until April 2003, when Mr. Dangler did nothing, the absence of diligence on the part of Mr. Porter. He sat on his rights while the limitations period expired. If there are no further questions, thank you very much, Your Honor. Thank you. We'll give you a minute for questions. Unless the Court had questions, I would be inclined to submit it. All right. Thank you very much. The matter is submitted. Thank you. Thank you very much for a very interesting presentation. And the last case we have on the calendar today is Vasquez versus Walker.
judges: Hart, Gould, Bea